GRAY CONSTRUCTION COMPANY, Respondent, v. HYDE, et al, Appellant.

(244 N. W. 320.)

(File No. 7189. Opinion filed September 27, 1932.)

*Bailey & Voorhees,* of Sioux Falls, for Appellants.

*Case & Case,* of Watertown (*Bruell & Henderson,* of Redfield, of counsel), for Respondent.

ROBERTS, J. This is an action by a creditor of the South Dakota Central Railway Company, a corporation, against certain of its stockholders seeking to recover from them upon the unpaid balance of the stock held by them, in sufficient amounts to satisfy the claim of the plaintiff. The plaintiff had judgment which was affirmed by this court in an opinion reported in 49 S. D. 543, 207 N. W. 536. On rehearing, the original opinion was modified and the case was remanded to the circuit court with directions to ascertain the necessary facts and proceed further in conformity with the second opinion. 54 S. D. 122, 222 N. W. 675.

It is admitted by the defendants that at the commencement of this action the railway company was indebted to the plaintiff in the amount for which the action was brought, and that the company was insolvent, having no property and unable to pay its indebtedness to the plaintiff. The question here involved is whether the defendants are liable for the amount of such claim by reason of any difference that may exist between amount paid upon the shares held by them and the par value.

The case was originally tried upon the theory that it was immaterial whether the defendants were holders of stock acquired from the corporation or were transferees of stock previously issued; that the facts that the defendants were stockholders and that the par value thereof had not been paid to the corporation were sufficient to warrant the rendering of judgment against them. In the second opinion referred to this court held that in so far as the defendants are original holders of stock they are within the provisions of section 8779, Rev. Code 1919, but that they are not liable for the unpaid balance upon shares which were purchased in the open market for a valuable consideration and without notice that the corporation had not been paid in full for the stock at the time of its issuance.

The trial court upon the second hearing made a supplemental finding to the effect that the defendants purchased their stock with knowledge and under circumstances and conditions affirming knowledge in them of the fact that the full par value of shares of stock held by them had not been paid to the South Dakota Central Railway Company and that the company had not in fact received money or value in excess of $25 per share. The defendants assign

as error the insufficiency of the evidence to support this supplemental finding of fact.

The undissputed evidence is that the company never received money or value in excess of $25 for each share of stock issued. The controlling question therefore is whether the defendants acquired the shares of stock with knowledge or notice that the full par value had not been paid. We will examine the evidence with the view of applying the rule announced in the former appeal. The South Dakota Central Railway Company was incorporated in 1903. P. F. Sherman was the principal promoter of this railroad, which extends from Sioux Falls to Watertown, and was the president of the company from the time of its organization to 1910. He was also during this time president of the Minnehaha National Bank of Sioux Falls, and defendant Baker was the cashier. Each of the ten incorporators of the railroad company agreed to invest $10,000 and to receive eight times that amount in stock. Other stock was offered and sold to the public by the company at $25 per share. A resolution of the board of directors dated June 9, 1905, recites that P. F. Sherman and four others named had rendered good and sufficient service in behalf of the company and each had a claim for $47,600, and directed that shares for that amount fully paid and nonassessable issue to each. It further directed that stock in the sum of $95,200 fully paid and non assessable issue to F. L. Maytag. No services, except attendance upon board meetings and inspection trips, were in fact rendered by the recipients of this stock.

Defendant Baker was not an incorporator or subscriber to an original issue of stock. The records of the corporation disclose that one hundred shares issued to G. W. McArthur were transferred on February 2, 1911, and two hundred and twenty shares issued to P. F. Sherman were transferred on March 4, 1911, to defendant Baker. It is the undisputed evidence that he was the owner of two hundred and twenty shares at the time of the commencement of this action. Immediately prior to the acquisition of this stock, he had been a business associate of Sherman for more than eight years, and the latter testified with respect to Baker's knowledge of the transactions of the company as follows:

"Q. Now, then, from the time you were president of the

bank, president and in charge of the construction of the South Dakota Central Railway Company, did you at Sioux Falls have conversation with Mr. Baker relative to the South Dakota Central Railway Company? A. Yes, sir.

"Q. During that time did you have conversation with him as to how the company was financed, what it was selling its stock for? A. Why, I told him what I was doing. We had incorporated this company. There wasn't anything about the company I did not tell him. I did not know anything about the company, I did not tell him.

"Q. Did you and Mr. Baker discuss the fact that these different men whose names you have given had all bought stock of the company upon a ratio of eight to one? A. Yes, sir.

"Q. Tell the discussion. How did you discuss it? Where did you discuss it? A. I can only tell it in substance.

"Q. Tell it in substance. A. I can only repeat what we did and then say I told it to Mr. Baker. What we did do was to incorporate a company composed of ten men, a railroad company, and we each put in $10,000 and took eight times as much stock for our money; for instance, I put in $10,000 and got $80,000 worth of stock, and Mr. Maytag took a like amount.

"Q. Did you tell him about that. A. Yes, sir.

"Q. Did you have any discussion with Mr. Baker about the block at $25 a share during the time that you were president of the bank and he was cashier? A. Yes, sir.

"Q. What did you tell him you had done? A. We had decided to sell a certain block of stock at 25 cents upon the dollar. If I may explain, understand this stock was not offered to the public first. The objection of Mr. Maytag and others was to shares at $25 because they were worth more, and they wanted to put the price at fifty instead of twenty-five, and I said I know we can sell it at twenty-five, what we don't want, and I don't think we can at fifty, so I think it was put at twenty-five.

"Q. That is what you did do, put it at $25 a share? A. Yes, sir.

"Q. Did you tell Mr. Baker that? A. Yes, sir.

"Q. That was while you were president of the bank and he was cashier? You were also president of the road and building the road? A. Yes, sir."

■ We are of the view that the evidence is sufficient to sustain the supplemental finding as to defendant Baker. It does not definitely appear that he knew the amount paid to the corporation upon the stock acquired by him, but facts brought to his attention and sufficient to put an ordinarily prudent person upon inquiry, so that if the inquiry were made it would lead to knowledge that the stock was unpaid, were sufficient to justify the finding that he as transferee had knowledge or notice. Garden City Sand Co. v. Crematory Company, 205 Ill. 42, 68 N. E. 724; Powers v. Elliott, 222 Mo. App. 322, 296 S. W. 828; Gillett v. Chicago Title & Trust Co., 230 Ill. 373, 82 N. E. 891.

Charles Fantle and Sam Fantle each acquired one hundred shares of stock on April 25, 1908. The entries in the stock record of the company designate these shares as an original issue. Bearing the same date, the following entries were also made in the books of the company: "Sundries Credit Capital Stock, $20,000. Debit Construction Account, discount on 200 shares at 75, $15,000. Debit Charles Fantle $2500. Debit Sam Fantle $2500." There is some conflict in the evidence as to the origin of this stock, but the evidence is ample to justify the conclusion that these shares were acquired directly by the Fantles from the corporation. Sam Fantle subsequently acquired two hundred and ten shares, and it is fairly inferable that he had knowledge or notice that the par value of this stock had not been paid. The issuance of the prior stock by the company to him at $25 a share was at least sufficient to put him upon inquiry. Whether the evidence is sufficient to sustain the finding that he had knowledge or notice that the par value of the stock transferred to him prior to April 25, 1908, was not fully paid is not here material. The unpaid balance upon the original issue and stock subsequently purchased exceeds the amount of plaintiff's claim.

■ It remains to consider the evidence with reference to the purchase of stock by A. W. Hyde. He was a practicing physician at Brookings, and had no part in the organization of the company. It does not appear from the record that he had any information with respect to the issuance of stock to the original incorporators or the offer and sale by the company of stock for an amount less than par to the public. He testified that he purchased directly from the company twenty-three shares for $25 a share, and that

he afterwards acquired seven shares which had previously issued to one F. L. Cummins. The records of the company also indicate that an original certificate of the company for the twenty-three shares was issued to him. We do not believe the evidence sufficient, however, to justify a finding that he had knowledge or notice that the par value of the stock previously purchased was not fully paid.

The judgment appealed from is in such form that it is not separable for partial affirmance and partial reversal. It is therefore reversed, and the cause is remanded with directions to the trial court to enter judgment in favor of respondent and against the appellants, identical in substance with the judgment appealed from, except that as to the appellant Anna R. Hyde, as executrix of the estate of A. W. Hyde, deceased, the extent of the recovery shall not exceed the unpaid balance upon thirty shares of stock. The order denying motion for new trial is affirmed, and the motion of respondent to dismiss the appeal is denied. No costs of appeal shall be taxed as between respondent and appellant Anna R. Hyde, as executrix of the estate of A. W. Hyde, deceased. Respondent may tax costs of appeal against the other appellants.

CAMPBELL, P. J., and POLLEY, WARREN, and RUDOLPH, JJ., concur.